**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**Heather Morgan,**

      Plaintiff,

**v.**

**Phil Long Dealerships, Inc.,
a Colorado Corporation,**

      Defendant.

## COMPLAINT

COMES NOW Plaintiff, Heather Morgan, and for her Complaint against the Defendant, Phil Long Dealerships, Inc. ("Phil Long"), and alleges the following:

### Introduction

1.  This is a proceeding for reinstatement and damages to redress violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and ERISA § 510, 29 U.S.C. § 1140, based upon the termination of Ms. Morgan's employment following her return to work from surgery associated with breast cancer.

2.  Additionally, this proceeding seeks damages to redress violations of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Equal Pay Act, 29 U.S.C. § 206(d)(1) based upon the fact that Phil Long paid Ms. Morgan at a lower rate than male colleagues

1

performing the same job.

## Jurisdiction

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## Venue

4. The unlawful employment actions described below were committed in the state of Colorado.

5. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## Parties

6. Heather Morgan is a natural person residing in El Paso County, Colorado.

7. Ms. Morgan is a woman.

8. Ms. Morgan is a former employee of Phil Long.

9. Phil Long is a Colorado corporation doing business in good standing in the state of Colorado.

10. Phil Long operates numerous new and used car dealerships throughout Colorado and New Mexico.

11. Ms. Morgan worked for Phil Long from February 2012 to October 2015 and again from January 2016 until November 15, 2017.

12. Phil Long terminated Ms. Morgan's employment on November 15, 2017.

13. During her tenure with Phil Long, Ms. Morgan worked as a car salesperson, an internet salesperson, a finance manager, a used car manager, and a new car manager.

14. At the time her employment was terminated on November 15, 2017, Ms. Morgan was

employed as a new car manager at Phil Long's Colorado Springs Kia store.

15. Phil Long employs more than 50 employees.

## General Allegations

16. All previous allegations are incorporated herein.

17. Ms. Morgan was an enthusiastic employee of Phil Long and was committed to her job.

18. Ms. Morgan put the success of Phil Long above all else, including her family and her health.

19. On March 16, 2017, Ms. Morgan was diagnosed with breast cancer.

20. The type of breast cancer Ms. Morgan was diagnosed with is very aggressive, and as a result, Ms. Morgan underwent a double mastectomy, a surgical procedure to remove cancerous breast tissue and potentially prevent the further spread of the cancer.

21. Ms. Morgan requested medical leave under the FMLA for care and treatment of her own serious health condition after she learned of her cancer diagnosis.

22. On March 20, 2017, Phil Long provided Ms. Morgan with FMLA paperwork, including a Notice of Eligibility, Notice of Rights and Responsibilities, and a Certification of Health Care Provider form.

23. The Notice of Rights and Responsibilities form Phil Long provided to Ms. Morgan indicated that she was eligible for FMLA leave.

24. On March 31, 2017, Ms. Morgan's physician sent a completed Certification of Health Care Provider form to Phil Long indicating that Ms. Morgan would require medical leave and leave for follow up treatment.

25. Due to the cancer diagnosis, and the need for multiple surgeries and numerous other

treatments, Ms. Morgan was approved to use intermittent FMLA leave.

26. In July 2017, Ms. Morgan was transferred to Phil Long's Colorado Springs Kia store to work as the new car manager.

27. At the time of her transfer, Ms. Morgan was told that she was being moved to the Kia store because of her past successes in fixing or improving stores with operational issues.

28. Ms. Morgan was the only female new car manager employed by Phil Long at any of its stores.

29. After she started working at the Kia store, Ms. Morgan learned that she was the lowest paid new car manager in the company, as she received a lower commission rate than any other new car manager in the company.

30. Ms. Morgan also was not eligible to receive bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

31. Phil Long's male new car managers receive bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

32. Ms. Morgan was also paid a lower commission rate than the used car manager at the Kia store, despite the fact that the two performed substantially equivalent duties.

33. On September 28, 2017, Ms. Morgan had surgery to remove a port that had been implanted as part of her cancer treatment.

34. On October 3, 2017, Ms. Morgan met with Greg Cannell, General Manager, and his supervisor, Mike Cimino.

35. During that meeting, Mike Cimino said Ms. Morgan was the definition of perseverance, and he could not believe how hard she was working considering everything she was going

through—a reference to her cancer, treatment, and recovery—and that he appreciated it.

36.  Mr. Cimino also stated that no one at the Kia store, including Ms. Morgan, was in jeopardy of losing their job.

37.  As a result of Ms. Morgan's cancer, and to prevent it from potentially spreading, her doctors recommended that she have a hysterectomy, a surgical procedure to remove her uterus.

38.  The hysterectomy was initially scheduled for October 30, 2017 and then rescheduled for October 31, 2017.

39.  Ms. Morgan was also required to undergo a surgical reconstruction procedure.

40.  That procedure was scheduled for November 7, 2017.

41.  Ms. Morgan requested, and was approved for, medical leave from October 30 through November 14, 2017 in order to have the hysterectomy and surgical reconstruction procedures close together in order to not miss too much work at one time.

42.  Ms. Morgan discussed the surgery date, and the need to change the date from October 30 to October 31 with Mr. Cannell, and Carmen Burch in human resources.

43.  Due to issues with insurance, the hysterectomy was postponed.

44.  Mr. Cannell expressed his concern about the date of the hysterectomy to Ms. Morgan, as he wanted her to work during a sale on November 2-4, 2017.

45.  Ms. Morgan told Mr. Cannell that she had no problem coming in and working the week before her reconstruction surgery and agreed that she would change the dates of her medical leave to November 7-14 instead of October 30-November 14 in order to be at work as requested by Mr. Cannell.

46.  Ms. Morgan then changed the dates of her leave and worked during the sale, as Mr.

Cannell requested.

47. As further evidence of Ms. Morgan's commitment to Phil Long, she cancelled a doctor's appointment scheduled for October 30, 2017 because there were not enough managers scheduled to work at the Kia store that day.

48. In the late afternoon of October 30, 2017, Ms. Morgan received a call from Ms. Burch in human resources who wanted information about her surgery dates.

49. Ms. Morgan told Ms. Burch that the surgical reconstruction was scheduled for November 7, and that the oncologist and OBGYN were working on a dispute with the insurance company over the hysterectomy.

50. During the call, Ms. Morgan asked Ms. Burch why there was so much concern over these surgeries when there had not been any issues when she previously requested the medical leave.

51. Ms. Burch told Ms. Morgan that Mike Cimino was concerned about the store and needed Ms. Morgan there, indicating his concern over her need for medical leave.

52. Ms. Burch then asked Ms. Morgan to agree to put the hysterectomy off until after the first of the year.

53. Ms. Morgan explained to Ms. Burch that the hysterectomy was needed to insure the cancer had less chance of coming back and the doctors wanted it done as soon as possible.

54. Ms. Burch also stated that the request to postpone the surgery was made because Mike Cimino was concerned about how long Ms. Morgan was going to be out and that he really needed her at the store.

55. Ms. Burch then reiterated that management was concerned that Ms. Morgan would be gone for 5 to 6 weeks, and that there would not be a manager to cover the store.

56. Despite Ms. Burch's request, and despite Ms. Morgan's commitment to the company, Ms. Morgan would not agree to postpone the hysterectomy because she was extremely fearful of the cancer spreading.

57. After the call with Ms. Burch ended, Ms. Morgan went to Mr. Cannell to discuss her concerns about what had happened during the call.

58. Ms. Morgan told Mr. Cannell that she was worried that Phil Long was going to terminate her employment because of her disability and her need for medical leave.

59. Mr. Cannell did not respond to Ms. Morgan's concerns; however, he knew that Ms. Morgan was scheduled to be absent from work starting November 7, 2017 for the surgical reconstruction.

60. Mr. Cannell and Ms. Morgan met on November 3, 2017.

61. During that meeting Mr. Cannell became very angry and hostile toward Ms. Morgan.

62. He told Ms. Morgan that she was of no use to anyone in the company and that no one was in her corner.

63. Mr. Cannell said that he did not want her there, and that nobody wanted Ms. Morgan working at the store.

64. Ms. Morgan was very upset by Mr. Cannell's comments, and she told Mr. Cannell if no one wanted her at the store, that she would like to be transferred when she returned from her surgery.

65. Ms. Morgan believes that Mr. Cannell spoke to her in that offensive and demeaning way because of the expense associated with her disability and that he did not want to accommodate her need for leave for treatment of her disability.

66. After that November 3, 2017 meeting, Ms. Morgan emailed Ms. Burch to let her know about Mr. Cannell's statements that Ms. Morgan that she was of no use to anyone and unwanted at the store.

67. In response, Ms. Burch told Ms. Morgan that she had three options: (1) to try and work things out with Mr. Cannell; (2) to quit and find employment elsewhere; or (3) to ask for a transfer.

68. Ms. Morgan told Ms. Burch that she had asked for a transfer, and she asked Ms. Burch to help her because she was concerned about remaining in a work environment where she was subjected to hostility and demeaning insults because of her disability and need for medical leave.

69. On November 7, 2017, Ms. Morgan had her reconstruction surgery and went on medical leave.

70. When Ms. Morgan's medical leave started, she learned that her work email had been disabled and all of her passwords had been changed.

71. During her prior uses of medical leave, Ms. Morgan's email had not been disabled and her passwords had not been changed.

72. Ms. Morgan was off work on medical leave until November 15, 2017 when she returned to work.

73. When Ms. Morgan arrived at work on November 15, 2017, Mr. Cannell was present at the dealership despite it being his scheduled day off.

74. Not long after returning to work on November 15, 2017, Ms. Morgan was summoned into a meeting with Mr. Cannell and Ms. Burch.

75. During the meeting, they told her that a customer had accused Ms. Morgan of failing to

disclose that a van she sold had previously been stolen.

76. Ms. Morgan denied the allegation and explained to Mr. Cannell and Ms. Burch that the accusation was not true.

77. After explaining to Mr. Cannell and Ms. Burch that the accusation about the sale was not true, they asked Ms. Morgan to step out of the meeting.

78. Ms. Morgan was able to observe Mr. Cannell and Ms. Burch through a sliding glass door while she was out of the office in which they were meeting.

79. While Ms. Morgan was out of the office, Mr. Cannell and Ms. Burch spoke to each other for approximately 10-15 minutes before asking Ms. Morgan to come back into the office.

80. Mr. Cannell and Ms. Burch made the decision to terminate Ms. Morgan's employment.

81. When Ms. Morgan returned to the office, Mr. Cannell told her that her employment was terminated and gave her a separation notice.

82. The separation notice was prepared before the meeting and before Ms. Morgan had an opportunity to refute the allegations against her.

83. Ms. Burch told Ms. Morgan that she could not have a copy of the separation notice unless she signed it.

84. When other Phil Long employees have been accused of violations in the nature of those Ms. Morgan was accused of by the customer, those employees have not been terminated.

85. Other employees who have altered forms have not been terminated. Those employees did not use FMLA leave or have a disability.

86. Other employees who have engaged in similar conduct to that Ms. Morgan was accused of have not been terminated. Those employees did not use FMLA leave or have a disability.

87. Following Ms. Morgan's termination, but prior to her loss of insurance benefits, Ms. Morgan underwent a partial hysterectomy at her physician's recommendation due to concerns about the potential for cancer recurrence.

88. A few weeks later, Ms. Morgan underwent another surgical procedure to complete the hysterectomy.

## First Cause of Action
### (Family and Medical Leave Act)

89. Plaintiff realleges all prior paragraphs and incorporates them herein.

90. Phil Long employs fifty or more employees for each working day during each of the twenty or more calendar workweeks in 2016 and 2017.

91. Phil Long is a covered employer under the FMLA.

92. Ms. Morgan worked in area, Colorado Springs and the greater Front Range, where Phil Long employs fifty or more employees within a seventy five mile radius.

93. Ms. Morgan worked for Phil Long for more than twelve months prior to the termination of her employment.

94. Ms. Morgan worked more than 1,250 hours during the twelve month period prior to the termination of her employment.

95. Ms. Morgan suffered from a serious health condition during the course of her employment with Phil Long.

96. Phil Long approved Ms. Morgan's use of intermittent FMLA leave in March, 2017.

97. Phil Long interfered with Ms. Morgan's exercise of her substantive rights under the FMLA.

98. Phil Long pressured Ms. Morgan into not taking leave, which amounts to a denial of

leave.

99. Phil Long terminated Ms. Morgan's employer to prevent her from using the full amount of available leave to care for and receive treatment for her own serious medical condition, which amounts to a denial of leave.

100. Phil Long denied Ms. Morgan reinstatement to her previous position or a substantially equivalent position.

101. Phil Long's interference with, and denial of, Ms. Morgan's substantive rights under the FMLA resulted in substantial financial loss, including the loss of income that supported her family and the loss of medical insurance while Ms. Morgan was battling breast cancer.

102. Defendant's acts and omissions violated Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. § 2601.

## Second Cause of Action
### (Americans with Disabilities Act - Disability Discrimination)

103. Plaintiff realleges all prior paragraphs and incorporates them herein.

104. Phil Long qualifies an employer under the ADA pursuant to 42 U.S.C. § 12111(5)(a).

105. Ms. Morgan is a qualified individual with a disability, has a record of a disability, and is regarded as having a disability due to her physical impairments (breast cancer).

106. Breast cancer is a physical impairment.

107. Ms. Morgan's physical impairment resulted in substantial limitations to her major life activities, including normal cell growth and reproductive functions.

108. Ms. Morgan had the required skill, experience, education, and other job related requirements to work as a New Car Manager for Phil Long.

109. Ms. Morgan could perform the essential functions of her New Car Manager position for

Phil Long, with or without reasonable accommodations.

110. Ms. Morgan sought to use medical leave as a reasonable accommodation for her disability.

111. Phil Long terminated Ms. Morgan's employment on the first day after she returned to work following her use of medical leave to undergo a surgical procedure related to her breast cancer.

112. Phil Long's decision to terminate Ms. Morgan's employment was caused by her disability.

113. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12112.

## Third Cause of Action
### (ERISA – Section 510)

114. Plaintiff realleges all prior paragraphs and incorporates them herein.

115. Ms. Morgan had the required skill, experience, education, and other job related requirements to work as a New Car Manager for Phil Long.

116. Phil Long provided Ms. Morgan with a private sector health insurance plan covered by ERISA.

117. Phil Long management expressed a desire to reduce employee health care costs.

118. Phil Long knew that Ms. Morgan had embarked on an expensive course of medical treatment for breast cancer and had additional medical treatments upcoming.

119. Phil Long asked Ms. Morgan to delay undergoing treatment for her breast cancer.

120. Ms. Morgan declined to postpone her medical treatments.

121. After Ms. Morgan declined to postpone her medical treatments, Phil Long terminated Ms.

Morgan's employment.

122. Phil Long terminated Ms. Morgan's employment in order to interfere with Ms. Morgan's use of her employer provided health insurance to obtain further medical treatment for her breast cancer.

123. Phil Long terminated Ms. Morgan's employment in retaliation for using her employer provided health insurance to obtain medical treatment for breast cancer.

124. Defendant's acts and omissions violated Plaintiff's rights under Section 510 of ERISA, 29 U.S.C. § 1140.

## Fourth Cause of Action
## (Equal Pay Act)

125. Plaintiff realleges all prior paragraphs and incorporates them herein.

126. Ms. Morgan worked as a New Car Manager for Phil Long.

127. Ms. Morgan was the only female New Car Manager.

128. Phil Long paid Ms. Morgan a lower commission than the other, male New Car Managers.

129. Phil Long also paid Ms. Morgan a lower commission than the Used Car Manager at the Kia Store where Ms. Morgan worked.

130. Phil Long provided male New Car Managers bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

131. Phil Long did not provide Ms. Morgan any bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

132. Ms. Morgan's work as a New Car Manager was substantially equal to the work performed by male New and Used Car Managers.

133. Ms. Morgan performed her work as a New Car Manager under the same conditions as

male New and Used Car Managers.

134. Phil Long paid male employees performing substantially equal work more than Ms. Morgan.

135. Defendant's acts and omissions violated Plaintiff's rights under the Equal Pay Act, 29 U.S.C. 206(d)(1).

136. Defendant willfully violated the Equal Pay Act by paying Ms. Morgan less than male employees performing substantially equal work.

### Fifth Cause of Action
### (Title VII – Pay Discrimination)

137. Plaintiff realleges all prior paragraphs and incorporates them herein.

138. Ms. Morgan worked as a New Car Manager for Phil Long.

139. Ms. Morgan was the only female New Car Manager.

140. Phil Long paid Ms. Morgan a lower commission than the other, male New Car Managers.

141. Phil Long also paid Ms. Morgan a lower commission than the Used Car Manager at the Kia Store where Ms. Morgan worked.

142. Phil Long provided male New Car Managers bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

143. Phil Long did not provide Ms. Morgan any bonuses for achieving forecasts for units, gross forecasts, or finance forecasts.

144. Ms. Morgan's work as a New Car Manager was similar to the work performed by male New and Used Car Managers.

145. Phil Long intentionally paid male employees performing similar work more than Ms. Morgan.

146. Defendant's acts and omissions violated Plaintiff's rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1).

## Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

a. Nominal damages;

b. Reinstatement and back pay, including loss of benefits and seniority, or front pay in lieu of reinstatement;

c. Liquidated damages;

d. Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

e. Equitable remedies under Section 502 of ERISA, including injunctive relief and all equitable relief necessary to enforce the provision of the plan and redress all violations;

f. Punitive damages;

g. Pre- and post-judgment interest at the highest rate allowed by law;

h. Costs and reasonable attorney's fees; and

i. All other legal or equitable relief to which Plaintiff is entitled.

## Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 15th day of November, 2018.

CORNISH & DELL'OLIO, P.C.

s/Bradley J. Sherman

                                             Bradley J. Sherman, # 39452
                                             Ian D. Kalmanowitz, # 32379
                                             Cornish & Dell'Olio, P.C.
                                             431 N. Cascade Ave. Suite 1
                                             Colorado Springs, CO 80903
                                             719-475-1204
                                             719-475-1264 (fax)
                                             bsherman@cornishanddellolio.com
                                             ikalmanowitz@cornishanddellolio.com

Plaintiff's address:
3322 West Fontanero Street
Colorado Springs, CO 80904

16